

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-25-00151-CR

---

ALAN RAY BROWN, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 55790-A

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

A Gregg County jury convicted Alan Ray Brown of solicitation of a minor, a second-degree felony. *See* TEX. PENAL CODE ANN. § 43.021(b)(2) (Supp.). After Brown pled true to the State's punishment enhancement allegation, the trial court sentenced him to forty-five years' imprisonment. On appeal, Brown argues that (1) the evidence is insufficient to support the jury's verdict of guilt and (2) the trial court erred by admitting evidence of Brown's WhatsApp messages during his trial.

We find that legally sufficient evidence supported the jury's verdict of guilt. We further find that there was no abuse of discretion in the trial court's evidentiary rulings. Even so, we modify the judgment to reflect that Brown's sentence was assessed by the trial court, not the jury. As modified, we affirm the trial court's judgment.

## I.     Legally Sufficient Evidence Supports the Jury's Verdict of Guilt

In his third point of error on appeal,[1] Brown argues that the evidence was legally insufficient to show that he solicited a minor. As applied to this case, "[a] person commits an offense if the person knowingly offers or agrees to pay a fee to another person for the purpose of engaging in sexual conduct with that person or another." TEX. PENAL CODE ANN. § 43.021(a) (Supp.). The offense is a second-degree felony if the person solicited is "represented to the actor as being younger than 18 years of age" or is "believed by the actor to be younger than 18 years

---

[1]We address Appellant's legal sufficiency issue out of the order in which it is presented in Appellant's brief because, if sustained, it would result in an acquittal, thereby rendering his other issues moot. *See Martinez v. State*, No. 01-19-00906-CR, 2021 WL 1679546, at 2 (Tex. App.—Houston [1st Dist.] Apr. 29, 2021, no pet.) (mem. op., not designated for publication) (citing *Benavidez v. State*, 323 S.W.3d 179, 182 (Tex. Crim. App. 2010) ("holding sufficiency of evidence, when raised, must be addressed before trial error because sustaining it results in acquittal and 'would interpose a jeopardy bar to retrial'")).

of age." TEX. PENAL CODE ANN. § 43.021(b)(2)(B), (C). Brown argues that, while the evidence shows he wished to have sex with a minor, Brown did not pay to have sex with a minor.

### A. Standard of Review

"The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence." *Braughton v. State*, 569 S.W.3d 592, 607 (Tex. Crim. App. 2018) (citing *Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979)). "In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 319); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 319)).

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "Circumstantial evidence and direct evidence are

equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13). "Even erroneously admitted evidence must be considered when addressing a challenge to the sufficiency of the evidence." *Moore v. State*, 169 S.W.3d 467, 477 (Tex. App.—Texarkana 2005, pet. ref'd); *see Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Williamson*, 589 S.W.3d at 298 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Here, the State alleged that Brown "knowingly agree[d] to pay a fee to another person . . . for the purpose of engaging in sexual conduct, namely sexual intercourse with Joy,[2] and Joy was represented to the defendant as being younger than 18 years of age, and the fee constituted money."

## B.     The Evidence at Trial

At trial, the evidence showed that Brown had been arrested on an unrelated charge and that his charge for solicitation of a minor resulted from the search of his cell phone. After his arrest, Brown's adult stepson, Mickey Hall, testified that he called the Longview Police Department (LPD) to turn over Brown's cell phone after finding inappropriate messages Brown had sent. Hall testified that he knew the cell phone belonged to Brown because he had watched Brown use it on many occasions.

---

[2]We use pseudonyms to protect the identity of any person who was a minor at the time of the offense. *See* TEX. R. APP. P. 9.10.

Deborah Styles, a detective with the LPD, said she went to Brown's house to pick up the cell phone from Hall. Styles testified that she logged Brown's cell phone into the LPD "cyber lab" while LPD awaited a search warrant. Trenton Capps, an LPD detective for the Special Victims Unit (SVU), obtained a warrant to search Brown's cell phone. Joshua Hall, an SVU detective with the LPD, testified that he used "Cellebrite," a digital forensic software suite, to extract data from Brown's cell phone when executing the search warrant. The data extracted included text messages and WhatsApp messages. Detective Hall testified that the cell phone's user was Brown and that the email address attached to the cell phone was Brown's email address.

Capps testified that the cell phone contained photographs of Brown's house in addition to self-portraits of Brown. Capps testified that he was "100 percent" sure that the cell phone belonged to Brown. When asked what caused him concern as he searched the cell phone, Capps testified that Brown's text and WhatsApp conversations were "sexually based" and that he "observed a particular [WhatsApp] conversation with someone who [Brown] was speaking with in what appeared to be a relationship-style, talking about paying her to bring two children to . . . the United States to have sex with them." Capps testified that as he reviewed the conversation, he "ma[de] notes, trying to be as accurate as possible and verbatim what was said, even misspellings and capitalizations."

Capps testified that LPD became "locked out" of Brown's WhatsApp account, did not know how it happened, and needed Brown's password to access those messages. According to Capps, Brown sent several messages to a WhatsApp phone number with a Nigerian country code

5

in September 2023. The person with the Nigerian country code represented to Brown that she was a woman, whom we will refer to as Fran, who wished to marry him. The record shows that some of the WhatsApp messages were not introduced into evidence. However, from his notes, Capps testified that he read the following WhatsApp messages:

- On September 9, 2023, Brown sent a message to Fran stating, "*Look, I have sent you almost 2000, I'm not sending you any more money.*"

- Later, on September 9, Brown sent a message to Fran stating, "*You keep saying that you will go back and bring some little girls over for me.*"

- Again, on September 9, Brown sent a message to Fran stating, "*Even said you would bring Joy with you.*"

- On September 10, Brown sent a message to Fran stating, "*Really want to fuck Joy. She's just 16.*"

- On September 10, Fran responded, "[S]*he's 14 not 16. You can enjoy her*," and Brown said, "*Okay, 14, great. And yes, I will enjoy her*," "*I really like that she's just 14.*"

- On September 11, Brown sent a message to Fran stating, "*When Joy gets here, you are probably not getting any sex for a few days. I'm going to fuck the crap out of that little girl.*"

- On September 12, Brown sent a message stating, "*If I had $600 and I thought you would bring Joy over, I would send it to you. I really want to fuck Joy. She's cute. Just 14.*"

- On September 13, Brown sent Fran a message stating, "*You said you needed 500 to get here. I sent you 500.*"[3]

Capps also testified about WhatsApp messages that were printed and introduced into evidence at trial. Capps's testimony and the WhatsApp messages show that, on or after

[3]As we explain below, it appears that these bulleted messages were lost.

6

September 20, Brown sent a message to Fran saying, "You get here[.] You just stay in bed naked[.] You, Joy and her friend[.]" On September 22, Fran said to Brown, "Babe I need you so much," and Brown said, "You know I want you here [a]nd [y]ou know I really want to be fucking Joy[.] Probably her friend also once I see her." Brown sent another message to Fran stating, "I want your virginity[.] All three of you[.]" Capps testimony and the WhatsApp messages show, that Brown exchanged self-portraits on the chat. Brown asked for photographs of Joy and "[a] picture of her little friend also."

On September 27, Brown sent a message to Fran stating,

Look[.] I want you here[.] Then you started talking about Joy[.] I really want Joy here[.] She's cute and young[.] I want to be fucking her[.] Then you said something about her friend[.] If she's cute[,] [j]ust 11[,] I want to be fucking her also[.] I think it's great you will let me have sex with other girls[.] Especially if you are going to bring them to m[e].

Capps's testimony and the WhatsApp messages show that Brown said, "I'm sending it to you," implying that he was sending money, and he asked Fran, "How much do you need to get you, Joy and her friend here[?]" Fran responded with $5,000.00, which Brown said "[s]ound[ed] great," and added, "If you all three get here at the same time[,] [w]hat do you want me to do[?] I mean[,] I guess we have sex first[.]" Brown then asked if "Joy[']s little friend ha[d] a phone," Fran responded that the girls were not allowed to have a phone until they were fifteen or sixteen, and Brown replied, "That's to [sic] bad." Brown sent another message stating, "I'm going to fuck Joy everyday[.] Depends on what her little friend looks like [b]ut [s]he's just 11[.] I'm going to fuck her also[.]"

7

Fran sent Brown purported photographs of Joy's young friend. When Fran asked for more money, Brown told Fran, "I don't think you are coming here[.] Last time [y]ou said you needed $500 to get here I sent you $500[.] You didn't come over[.]" When Fran kept asking for money, Brown said, "I'm not sending you any more money[.] I have done that[.] You never come over[.]" On October 15, Brown said, "You, Joy and her friend[.] I want all three of you here," which again prompted a discussion about Fran needing money. Brown responded that he was not sending her "any more money." Brown reiterated to Fran, "I have sent you money[.] Sent you money[.] Sent you money[.] And [s]ent you money[.] You never come over[.]" According to Capps, Brown indicated that he had sent money to Fran to have Joy and her friend brought to the United States to have sex with him. Capps testified that it was clear that Brown was "talking to a scam artist."

After hearing this evidence and reviewing the WhatsApp messages that were admitted into evidence, the jury found Brown guilty of solicitation of a minor.

## C. Analysis

The evidence at trial shows that Brown wished to have sex with Joy, a minor. Yet, Brown argues that nothing shows that he offered or agreed to pay Fran so that he could engage in sexual contact with Joy. According to Brown, "[e]very time money was allegedly paid by [Brown] to [Fran] it was for the purposes of funding [Fran's] travel to America to live with and be married to [Brown]." We disagree with Brown's characterization of the evidence.

The evidence shows that Brown sent almost $2,000.00 to Fran, who said she "would bring Joy with [her]." On September 12, Brown said, "If I had $600 and I thought you would

8

bring Joy over, I would send it to you. I really want to fuck Joy. She's cute. Just 14." The next day, Brown said he had sent Fran $500.00. From this evidence, the jury was free to infer that Brown sent the $500.00 to Fran on September 13 so that Fran would bring Joy to the United States for the purpose of engaging in sex with Brown. On September 27, Brown sent Fran a message stating it was "[g]reat" that Fran was bringing Joy to him to have sex. When Brown asked how much it would be for Fran, Joy, and Joy's friend to come to America, Fran responded with a sum of $5,000.00. Brown said that sum "[s]ound[ed] great," indicating his agreement to pay, and noted that he would have sex with Joy. Brown also indicated that he had sent multiple other payments to Fran.

During his testimony, Capps said that there was a "correlation from money to sex" because "[m]ultiple times [Brown] directly referred to sending money to have Joy . . . be brought over." As for the $2,000.00 Brown initially sent, Capps testified, "Based on the context of the conversation, it was clear that [Brown] was sending money for [Fran] to get her and the . . . two children here."

The jury, which reviewed the WhatsApp messages admitted into evidence, was free to believe Capps's testimony. Viewing all of the evidence in the light most favorable to the prosecution, we find it legally sufficient to establish, beyond a reasonable doubt, that Brown agreed to pay money to Fran for the purpose of engaging in sexual conduct with Joy, a minor. As a result, we overrule Brown's third point of error.

9

## II. There Was No Abuse of Discretion in the Trial Court's Evidentiary Rulings

In his remaining points of error, Brown argues that the trial court erred by (1) admitting printouts of his WhatsApp messages and (2) Capps's testimony about Brown's lost WhatsApp messages.

### A. Standard of Review

Whether to admit evidence at trial is a preliminary question to be decided by the trial court. TEX. R. EVID. 104(a); *Tienda v. State*, 358 S.W.3d 633, 637–38 (Tex. Crim. App. 2012). "We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). "Abuse of discretion occurs only if the decision is 'so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g))). "We may not substitute our own decision for that of the trial court." *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). "We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case." *Id.* (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

### B. There Was No Abuse of Discretion in Admitting Printed WhatsApp Messages

Before trial, Brown filed a motion to exclude the printed WhatsApp messages on grounds that they were unauthenticated, included hearsay, and violated his confrontation clause rights. After voir dire, the trial court heard argument on Brown's motion. As for authentication, the

State represented that the cell phone was registered to Brown, linked to his email account, contained Brown's self-portraits, and would be authenticated through Brown's stepson and officer testimony.

The State argued that the printed WhatsApp messages were admissible because (1) Fran's statements were not hearsay since they were not offered for the truth of the matter asserted and (2) Brown's statements were admissible under a hearsay exception since they were statements against interest. Brown responded by arguing that Fran was unknown and he could not confront Fran, but the State responded that the WhatsApp messages were nontestimonial. The trial court overruled Brown's objections and gave him a running objection to his WhatsApp messages.

On appeal, Brown appears to concede that the printed WhatsApp messages were authenticated and that statements made by him were admissible under the statements-against-interest exception to the hearsay rule. *See* TEX. R. EVID. 803(24). As a result, he challenges only Fran's WhatsApp messages on the grounds that they were hearsay and violated his confrontation clause rights.

"Hearsay is a statement . . . other than one made by the declarant while testifying at the trial, which is offered to prove the truth of the matter asserted." *Richter v. State*, 482 S.W.3d 288, 299–300 (Tex. App.—Texarkana 2015, no pet.) (quoting *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995) (citing TEX. R. EVID. 801(d))). "An extrajudicial statement or writing which is offered for the purpose of showing *what* was said rather than for the *truth* of the matter stated therein does not constitute hearsay." *Id.* at 300 (quoting *Dinkins*, 894 S.W.2d at

11

347). In other words, "[a] statement is not hearsay if its relevancy does not hinge on its truthfulness." *Brooks v. State*, 900 S.W.2d 468, 474 n.6 (Tex. App.—Texarkana 1995, no writ).

Here, the State was not concerned about whether Fran's statements were true. In fact, Capps surmised that Fran was a scam artist looking for money, and it was likely that her statements were not true. *See id.* As a result, it did not matter whether Fran was a man or a woman, really knew a person named Joy, actually intended to come to the United States with Joy, or agreed to transport Joy to Brown. The relevance of Fran's printed messages was to show Brown's belief that Joy was a minor who would have sex with him if he paid Fran money to transport Joy. Therefore, the State sought to introduce Fran's statements simply to show the context in which Brown made his incriminating statements, which is a permissible "non-hearsay purpose[]" for admitting such evidence. *See Sandoval v. State*, 665 S.W.3d 496, 531 (Tex. Crim. App. 2022); *Jones v. State*, 466 S.W.3d 252, 266 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd).

Because Fran's statements were relevant to provide context to Brown's statements and were not offered to prove they were true, the trial court did not abuse its discretion by overruling Brown's hearsay objection. *See Sandoval*, 665 S.W.3d at 531; *Jones*, 466 S.W.3d at 266; *Woolverton v. State*, 324 S.W.3d 794, 801–02 (Tex. App.—Texarkana 2010, pet. denied); *Brooks*, 900 S.W.2d at 474 n.6.

Next, "to implicate the Confrontation Clause, an out-of-court statement must (1) have been made by a witness absent from trial and (2) be testimonial in nature." *Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011) (citing *Crawford v. Washington*, 541 U.S. 36, 50–52,

12

59 (2004)).  Common examples of testimonial statements include affidavits, court-testimony, confessions, or depositions.  *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010) (quoting *Wall v. State*, 184 S.W.3d 730, 735 (Tex. Crim. App. 2006)).  Brown does not explain how Fran's WhatsApp messages are testimonial in nature.  When determining whether a statement is testimonial, "we look to determine whether 'the surrounding circumstances objectively indicate that the primary purpose of the interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution.'"  *Id.* (quoting *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008)).

Here, nothing shows that Fran's WhatApp messages were testimonial.  *See Walter v. State*, 581 S.W.3d 957, 981 (Tex. App.—Eastland 2019, pet. ref'd) (finding informal text messages nontestimonial).  Fran's statements themselves were incriminating and show that they were not made under circumstances that would lead a reasonable person to believe that the messages would be used in a criminal trial.

We find that the trial court did not abuse its discretion by admitting Fran's printed WhatsApp messages into evidence.  As a result, we overrule Brown's first point of error.

### C.      Brown Does Not Preserve His Appellate Complaints About Capps's Testimony Regarding the Lost Messages

Next, Brown complains of Capps's testimony about the substance of Brown's lost WhatsApp messages.[4]

---

[4]Brown raises a separate complaint that admission of the lost WhatsApp messages was hearsay.  We find our analysis above controlling and conclude that the trial court did not abuse its discretion by admitting them.

During trial, the State noted that "there's one WhatsApp thread that we don't have." The State explained that LPD "said they gave us -- they gave our office three thumb drives," but that the State and defense had only seen one thumb drive. The State proposed that Capps, an LPD detective, be allowed to read his notes regarding the messages included in the lost thumb drive. Brown objected to allowing Capps to testify about the lost WhatsApp messages they "ha[d] no real record of."

Brown opined that there could be "something exculpatory in there." Brown objected that if the LPD had sent the messages to the district attorney's office and if the district attorney had lost the messages, there was "a spoilation of evidence problem" and the State "should not be allowed to use evidence that they once had and [can not] turn over now." The trial court overruled Brown's objections, stating "I really think this goes to the weight of the evidence and not admissibility."[5] At trial, Brown did not accuse the State of bad faith, complain about authentication of missing messages, or raise a statutory or *Brady* violation.[6]

On appeal, Brown argues that the State (1) violated his due process rights and Article 39.14 of the Texas Code of Criminal Procedure by refusing to provide the lost thumb drives, (2) committed a *Brady* violation by withholding exculpatory and impeachment evidence, (3) lost potentially useful evidence, and (4) did not sufficiently authenticate the lost messages. *See* Tex. Code Crim. Proc. Ann. art. 39.14 (Supp.). We find these issues unpreserved.

---

[5]The trial court granted Brown a running objection to Capps's testimony about the lost messages.

[6]*See Brady v. Maryland*, 373 U.S. 83 (1963).

To preserve a complaint for appellate review, a defendant must show that he first presented to the trial court a timely request, objection, or motion stating the specific grounds for his desired ruling. TEX. R. APP. P. 33.1(a)(1)(A). The record also must show that the trial court either "ruled on the request, objection, or motion, either expressly or implicitly" or "refused to rule on the request, objection, or motion, and the complaining party objected to the refusal." TEX. R. APP. P. 33.1(a)(2)(A), (B). Further, "[t]he point of error on appeal must comport with the objection made at trial." *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).

The rules regarding preservation apply to complaints of lack of due process and lack of authentication. *Compton v. State*, 666 S.W.3d 685, 731 (Tex. Crim. App. 2023); *Powell v. State*, 898 S.W.2d 821, 829 (Tex. Crim. App. 1994). Even a *Brady* complaint is required to be preserved either at trial or a motion for new trial. *Keeter v. State*, 175 S.W.3d 756, 759 (Tex. Crim. App. 2005) (finding that rules of preservation apply to *Brady*).

Also, a complaint regarding Article 39.14, which relates to discovery, requires a defendant to request a continuance to preserve error since a continuance, if granted, can afford a defendant "the opportunity to avoid the prejudice and impairment."[7] *Rodriguez v. State*, 630 S.W.3d 522, 524 (Tex. App.—Waco 2021, no pet.); *see Lindley v. State*, 635 S.W.2d 541, 543–44 (Tex. Crim. App. [Panel Op.] 1982); *Ruffins v. State*, 691 S.W.3d 166, 186–87 (Tex. App.—Austin 2024, no pet.). Here, Brown did not request a continuance.

---

[7]As the State noted, it needed Brown's password to access the WhatsApp messages. Had a continuance been granted, it is possible that the messages could have been retrieved or that the missing thumb drives could have been found. Capps testified that "we could [have those text messages] if we log[ged] back into WhatsApp, I believe, yes."

Brown also raises a complaint under *Arizona v. Youngblood* for the destruction of "potentially useful evidence." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). This applies to "cases in which the government no longer possesses the disputed evidence." *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999). The United States Supreme Court has held that, "unless a criminal defendant can show bad faith on the part of the police [or State], failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona*, 488 U.S. at 58. For this reason, it is the defendant's burden to establish that the State lost or destroyed the evidence in bad faith. *Ex parte Napper*, 322 S.W.3d 202, 229 (Tex. Crim. App. 2010) (orig. proceeding); *Moody v. State*, 551 S.W.3d 167, 170 (Tex. App.—Fort Worth 2017, no pet.) (citing *Illinois v. Fisher*, 540 U.S. 544, 547–48 (2004) (per curiam); *Youngblood*, 488 U.S. at 57–58). However, a claim of bad faith at trial is required to preserve a *Youngblood* complaint. *Garcia v. State*, 592 S.W.3d 590, 601 (Tex. App.—Eastland 2019, no pet.). At trial, Brown did not allege or present evidence that the State acted in bad faith.

Here, the appellate record shows that Brown did not raise his due process, *Youngblood*, authentication, or *Brady* complaints, and failed to request a continuance to preserve his complaint regarding a discovery violation. As a result, the trial court did not rule on such matters, and we find Brown's remaining complaints unpreserved.[8]

---

[8]Moreover, Brown argues that the information in the lost thumb drives could be exculpatory or used for impeachment, but Capps testified that he did not fail to include any missing messages that might be beneficial to Brown.

16

## III.    Modify the Judgment

"This Court has the power to correct and modify the judgment of the trial court for accuracy when the necessary data and information are part of the record." *Anthony v. State*, 531 S.W.3d 739, 743 (Tex. App.—Texarkana 2016, no pet.) (citing TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd) (en banc)).   "The authority of an appellate court to reform incorrect judgments is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court." *Id.* (quoting *Asberry*, 813 S.W.2d at 529–30).

Here, the trial court's judgment mistakenly states that the "JURY" assessed Brown's punishment.   However, the reporter's record shows that the jury was dismissed after the guilt/innocence phase of the trial and that the trial court assessed Brown's punishment. Accordingly, we modify the trial court's judgment to properly reflect the record.

## IV.    Conclusion

We modify the trial court's judgment to reflect that Brown's punishment was assessed by the trial court and not the jury.  As modified, we affirm the trial court's judgment.


Scott E. Stevens
Chief Justice

Date Submitted:      May 6, 2026
Date Decided:        July 17, 2026

Do Not Publish

17